**CHICAGO, ROCK ISLAND AND PA-
CIFIC RAILROAD COMPANY,
Appellant,**

v.

**Dallas D. SPETH and Olin Mathieson
Chemical Corporation, Appellees.**

No. 19187.

United States Court of Appeals
Eighth Circuit.

Dec. 12, 1968.

John R. Dudgeon, Lincoln, Neb., for appellant.

Philip B. Lush, Hopkins, Minn., for appellee, Dallas D. Speth.

Charles F. Gotch, of Cassem, Tierney, Adams & Henatsch, Omaha, Neb., for appellee, Olin Mathieson.

Before VAN OOSTERHOUT, Chief Judge, and BLACKMUN and LAY, Circuit Judges.

LAY, Circuit Judge.

The Chicago, Rock Island and Pacific Railroad Company appeals from an adverse judgment under the Federal Boiler Inspection Act, 45 U.S.C. §§ 22–34. The defendant seeks reversal challenging (1) the failure of plaintiff to prove a violation of the Boiler Inspection Act as a matter of law and (2) the trial court giving additional instructions to the jury in absence of counsel after the case had been submitted. We reverse and grant a new trial on damages only.

The evidence discloses that Dallas D. Speth was employed by the railroad as a fireman on a switch engine. On October 4, 1963, Speth observed two explosive torpedoes improperly placed on the edge of a rack inside the engine cab. The torpedoes were "stuck together," and while he was attempting to separate them before returning them to their proper storage place, they exploded. As a result of the explosion, he lost a thumb and a portion of his fingers on the left hand. The torpedoes had the word "Danger" marked on them. Speth testified that although he knew they were explosive, he had no reason to believe they were defective.

■■ The railroad seeks to avoid liability under the Federal Boiler Inspection Act on the ground that the facts in this case do not demonstrate that the injury was caused by a mechanical defect in railroad equipment. It is clear, however, that the Act does not make this a requirement for its application. As the United States Supreme Court stated in Lilly v. Grand Trunk W. R. R., 317 U.S. 481, 488, 63 S.Ct. 347, 352, 87 L.Ed. 411 (1943):

> "The [Boiler Inspection] Act without limitation speaks of equipment 'in proper condition and safe to operate * * * without unnecessary peril to life or limb.' Conditions other than mechanical imperfections can plainly render equipment unsafe to operate without unnecessary peril to life or limb."

See also Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); Holfester v. Long Island R. R., 360 F.2d 369 (2 Cir. 1966); Gowins v. Pennsylvania R. R., 299 F.2d 431, 433 (6 Cir. 1962). We find the record is factually sufficient to sustain the jury verdict and affirm the judgment as to liability against the railroad. However, because of errors relating to instructions on damages, we remand the case for a new trial on the issue of damages alone.

After the jury had been instructed by the court and had retired, the following colloquy between counsel and the court took place:

> "By the Court: I am inclined to think in this particular case that if the Jury raises any questions, that I would simply send the complete Charge to them and let them study it, but I recognize you would probably like to get back.

> "Mr. Dudgeon (attorney for the railroad): I will stay if Your Honor thinks this is the thing to do.

> "By the Court: You will be given an exception, if you are not here, to any additional Charge that I might give."

The jury retired in the middle of the afternoon. At 8:55 p. m. the record shows the following communication took place:

> "By the Court: Members of the Jury, you sent an inquiry to the Court inquiring about Question No. 8, and I gather your concern is whether or not that is related to something else. It is not. The question is plain and simple.

> (Interrogatory No. 8) "'WHAT AMOUNT DO YOU FIND FROM A PREPONDERANCE OF THE EVIDENCE TO BE A FAIR AND REASONABLE, BUT NOT EXCESSIVE, COMPENSATION FOR THE INJURIES AND DAMAGES WHICH THE PLAINTIFF HAS SUSTAINED SOLELY AS A RESULT OF THE ACCIDENT INVOLVED IN THIS ACTION?'

> "That would mean that if you had no other evidence, except the damage that this man has sustained, if any, this is the figure you will insert for that amount.

> "Do I make myself plain? It is not related to any other percentages at all, negligence or contributory negligence or anything else.

> "Do I make myself plain?"

At 9:10 p. m. the jury returned with a verdict of $16,000.00. An answer to a special interrogatory (submitted by reason of the alternative claim under the Federal Employers' Liability Act[1]) assessed the plaintiff's contributory negligence in the amount of forty per cent. After viewing the verdict, the court *sua sponte* said to the jury:

> "Members of the Jury, in response to your Question Eight, I ask you, is the figure inserted in Question Eight

---

1. The railroad also claims error on the charge relating its negligence under the Federal Employers' Liability Act. In view of our affirmance as to liability under the Federal Boiler Inspection Act we need not reach this alternative basis of appeal.

the total damage that you compute that the plaintiff has suffered or is this a net figure that you arrived at?

"The Foreman: This is a net figure.

"By the Court: Then I will have to send you back and ask you to complete the form as to the total damage irrespective of deductions, contributory negligence or anything else.

"Will you please do that?"

The jury then retired and five minutes later returned with a verdict of $40,000.-00.[2]

The matter of "additional instructions" in absence of counsel after a case is submitted to a jury has been a subject frequently discussed. We feel case authority makes clear the necessity of reversal here. See, e. g., Fillippon v. Albion Vein Slate Co., 250 U.S. 76, 39 S.Ct. 435, 63 L.Ed. 853 (1919); cf. Rice v. United States, 356 F.2d 709, 716–717 (8 Cir. 1966). Initially we note that the question propounded by the jury is not included in the record. Any question propounded by the jury, as well as the answer by the trial court, should affirmatively appear of record. It is an element of the trial itself. See Fillippon v. Albion Vein Slate Co., 250 U.S. at 81, 39 S.Ct. 435. In Arrington v. Robertson, 114 F.2d 821, 823 (3 Cir. 1940), the court pointed out:

"The record does not disclose the phraseology of the jury's question. Consequently we cannot know whether the instructions given, even though entirely sound as abstract legal statements, were appropriate to answer it, or whether additional instructions, appropriate and indeed necessary to supplement those given, might not have been suggested to the trial judge by counsel for the defendant if he had been given the opportunity to be present."

Secondly, counsel should be given specific notice and opportunity to be present at the giving of any oral instruction. Counsel should have the opportunity to know the jury's question and the court's intended response in order to make specific exception to any additional instruction. Any prospective or even subsequent grant of an overall exception[3] to an unknown or known charge fails to heed the primary reason for the rule providing for the exception. The purpose of the specific exception is to alert the trial court to possible error so that immediate correction might be made. Cf. Cone v. Beneficial Standard Life Ins. Co., 388 F.2d 456 (8 Cir. 1968). This was pointed out in Fillippon v. Albion Vein Slate Co., 250 U.S. at 82, 39 S.Ct. at 436 wherein Mr. Justice Pitney, speaking for the Court, stated:

"It is not correct, however, to regard the opportunity of afterwards excepting to the instruction and to the manner of giving it as equivalent to an opportunity to be present during the proceedings. To so hold would be to overlook the primary and essential function of an exception, which is to direct

2. The court then addressed the jury explaining his actions:

"Members of the Jury and this is strictly for your information, I tried to point out in the interrogatories and I submitted the case to you on the basis of interrogatories feeling that it would be hard to keep the issues divided, but actually, on the basis of your findings as to a violation of the Federal Boiler Inspection Act plaintiff would be entitled to recover the sum of $40,-000, because it wouldn't make any difference what negligence he was guilty of. If there is a violation of the Boiler Inspection Act, he is entitled to recover all of his damage.

"With respect to the balance, or at least the part of the Federal Employers Liability Act, the matter of contributory negligence then only comes into play in the matter of reducing his damages, but I think that you have come forth with answers to the interrogatories that will enable the Court to enter a proper judgment in the cause."

3. The court's procedure in granting an overall prospective exception to an unknown charge is deficient for another reason. Any general exception to a charge would not be sufficient to preserve error for subsequent appeal. The objection must be specific. See 5 Moore's Fed.Practice ¶ 51.04 at 2505.

the mind of the trial judge to the point in which it is supposed that he has erred in law, so that he may reconsider it and change his ruling if convinced of error, and that injustice and mistrials to inadvertent errors may thus be obviated."

Thirdly, the court's questioning of the jury regarding the amount of their verdict, even on a special verdict form is impermissible. Although the jury system may not provide a means to achieve faultless justice, it is still the best instrumentality our democratic society has devised to decide an adversary proceeding. As such, a jury must be totally immune from any possible coercion or subtle pressures to increase or decrease its decided verdict by reason of the court's interrogation and direction to reconsider its findings. If in his discretion a trial judge believes that a jury's verdict is too large or too small, his only alternative would be to grant a new trial. This is not to say where the verdict on its face shows a clear disregard for the court's instructions, the jury may not be asked to correct it. See Firemen's Ins. Co. of Newark, N. J. v. Craigie, 298 F.2d 457 (8 Cir. 1962).[4] However, a trial judge may not have the same jury reconsider what *appears* to him (or what he might determine upon general inquiry) to be a miscalculation of general damages.[5] Appearances do not always ring true, and possible prejudice by the court's inquiry may easily take place. To allow a judge to question a jury's process of deliberate decision, even though done in good faith to avoid an apparent miscarriage of justice, could result in abuses far outweighing the infrequent inability to correct what may *appear* to be or is erroneous or a mis-

understanding. And this must be true, even though reconsideration by the jury results in a verdict more accurately reflecting the jury's intentions. It is for similar reasons that a jury in making special findings is best directed not to concern themselves about whether their answers will be favorable to one party or the other or what the final result of the law suit may be. Cf. Johnson v. O'Brien, 258 Minn. 502, 105 N.W.2d 244, 88 A.L.R.2d 577 (1960); Erb v. Mutual Serv. Cas. Co., 20 Wis.2d 530, 123 N.W. 2d 493 (1963).

If the court's interrogation of the jury as to the amount of the verdict could be condoned in the instant case, then it would logically follow that the court or counsel could seek to correct a verdict on matters that are traditionally considered inherent in the verdict. If the verdict for $16,000.00 had been received, counsel could not have later shown by affidavit that the $16,000.00 was erroneously computed. Such a rule may seem harsh, but it is premised upon sound reasons of public policy. It is well settled that a jury's misunderstanding of testimony, misapprehension of law, errors in computation or improper methods of computation, unsound reasoning or other improper motives cannot be used to impeach a verdict. These matters all inhere in the verdict itself. Farmers Co-op. Elev. Ass'n Non-Stock, etc. v. Strand, 382 F.2d 224, 230 (8 Cir. 1967); United States v. Kansas City, Mo., 157 F.2d 459 (8 Cir. 1946); Stewart v. United States, 300 F. 769, 788 (8 Cir. 1924).

The reasons for the rule are best stated in McDonald v. Pless, 238 U.S. 264, 267, 35 S.Ct. 783, 784, 59 L.Ed. 1300

4. A new trial should be awarded if it is patent from the instructions that the jury's award disregards the court's clear direction. See, e. g., Glenwood Irrigation Co. v. Vollery, 248 F. 483 (8 Cir. 1918).

5. This statement does not apply to the court's correction of a patent error in

the form of the verdict. See Rocky Mountain Tool & Mach. Co. v. Tecon Corp., 371 F.2d 589 (10 Cir. 1966); 6A Moore's Fed. Practice ¶ 59.08 [4] at 3804–05. However, a judge may not substitute his own judgment for a mistake of a jury. Smyth Sales v. Petroleum Heat & Power Co., 141 F.2d 41 (3 Cir. 1944).

**296**

(1915), where the United States Supreme Court said:

"But let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party * * *. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference."

The same principle applies as well to a trial judge's interrogation of the jury after they have returned a verdict. If a court could attempt to "correct" a verdict by general inquiry of a jury, even though the questioning is well-intended and seemingly innocuous on the surface, the protected cloak of privacy around a jury's deliberations would be permanently shattered.

We are satisfied that the oral charge here given is both erroneous and prejudicial. In the instant case the trial court told the jury:

"Then I will have to send you back and ask you to complete the form as to the total damage *irrespective of deductions*, contributory negligence *or anything else*." (Emphasis ours.)

The jury had been previously told in the original instructions that all future damages awarded should be reduced to their present worth taking into consideration factors of life expectancy and current rates of interest. The effect of the court's later instruction was to nullify completely its prior instructions on present worth. This was prejudicial error to the defendant.

The defendant's appeal against the third party defendant Olin Mathieson has been abandoned and is dismissed. The judgment of liability is affirmed; the judgment of damages is vacated and the cause is remanded to the trial court for a new trial on damages alone. Between the plaintiff Speth and the defendant railroad, each party is ordered to pay its own costs.