2007 OK CIV APP 24

**STATE of Oklahoma, ex rel., PROTECTIVE HEALTH SERVICES of the Oklahoma State Department of Health, Plaintiff/Appellant,**

v.

**BILLINGS FAIRCHILD CENTER, INC., Defendant/Appellee.**

No. 101,767.

Court of Civil Appeals of Oklahoma, Division No. 4.

Oct. 24, 2006.

Certiorari Denied March 12, 2007.

Blake Bostick, Mary D. Womack, Oklahoma State Department of Health, Oklahoma City, OK, for Plaintiff/Appellant.

Danny K. Shadid, Danny K. Shadid, P.C., Nita R. Giles, Oklahoma City, OK, Nikki G. Leach, Perry, OK, for Defendant/Appellee.

KEITH RAPP, Vice Chief Judge.

¶ 1 The trial court plaintiff, State of Oklahoma ex rel. Protective Health Services of the Oklahoma State Department of Health (State) appeals a judgment in favor of the trial court defendant, Billings Fairchild Center, Inc. (BFC), finding that BFC had "answered sufficiently" the State's discovery requests. BFC counter-appeals the trial court's preceding decision finding that the

district court had jurisdiction to hear State's petition.

## BACKGROUND

¶ 2 The parties are generally in agreement as to the facts. State had cited BFC for a violation concerning "immediate jeopardy" of a resident. BFC requested an administrative hearing. In the administrative hearing case, BFC designated an expert witness.

¶ 3 When State indicated a desire to depose the expert, BFC's counsel advised that the expert would charge a fee at an hourly rate of $750.00. State then served interrogatories upon BFC seeking information as set out in 12 O.S. Supp.2005, § 3226(B)(3)(a)(3).[1] This appeal involves three of the questions and responses. They are:

Interrogatory No. 1b: Please provide a summary of the grounds for each opinion formed by Arnal Moorad, M.D., the expert witness.

Answer: The Petitioner does not know the specific grounds for each of Dr. Moorad's anticipated opinions. You will have to ask Dr. Moorad.

Interrogatory No. 1c: Please identify the qualifications of Arnal Moorad, M.D., the expert witness, including a listing of all publications authored by Dr. Moorad within the preceding ten (10) years.

Answer: Dr. Moorad is the Medical Director of Integris Jim Thorpe Hospital in Oklahoma City. He is Board Certified in internal medicine and rehabilitative medicine.[2] The Petitioner does not know Dr. Moorad's publications.

Interrogatory No. 1e: Please provide a listing of any other cases in which Arnal Moorad, M.D., the expert witness, has tes-

---

1. Subsection B(3) provides:

    3. TRIAL PREPARATION: EXPERTS.
    a. Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of paragraph 1 of this subsection and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:
    (1) A party may, through interrogatories, require any other party to identify each person whom that other party expects to call as an expert witness at trial and give the address at which that expert witness may be located.
    (2) After disclosure of the names and addresses of the expert witnesses, the other party expects to call as witnesses, the party, who has requested disclosure, may depose any such expert witnesses subject to scope of this section. Prior to taking the deposition the party must give notice as required in subsections A and C of Section 3230 of this title. If any documents are provided to such disclosed expert witnesses, the documents shall not be protected from disclosure by privilege or work product protection and they may be obtained through discovery.
    (3) In addition to taking the depositions of expert witnesses the party may, through interrogatories, require the party who expects to call the expert witnesses to state the subject matter on which each expert witness is expected to testify; the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion; the qualifications of each expert witness, including a list of all publications authored by the expert witness within the preceding ten (10) years; the compensation to be paid to the expert witness for the testimony and preparation for the testimony; and a listing of any other cases in which the expert witness has testified as an expert at trial or by deposition within the preceding four (4) years. An interrogatory seeking the information specified above shall be treated as a single interrogatory for purposes of the limitation on the number of interrogatories in Section 3233 of this title.
    b. A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only upon motion, when the court may order discovery as provided in Section 3235 of this title or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by any other means.
    c. Unless manifest injustice would result:
    (1) The court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under division (2) of subparagraph a of this paragraph and subparagraph b of this paragraph.
    (2) The court shall require that the party seeking discovery with respect to discovery obtained under subparagraph b of this paragraph, pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert.

2. BFC subsequently provided a *curriculum vitae* and also corrected the areas of board certification. State's appeal as to this Interrogatory pertains only to the response about the publications.

tified as an expert at trial or by deposition within the preceding four (4) years.

Answer: The Petitioner does not know.

¶ 4 The State requested that the Administrative Law Judge (ALJ) compel interrogatory answers. The ALJ ruled that there was no authority for the ALJ to consider and rule upon a motion to compel answers to interrogatories. The ALJ agreed with BFC's argument that the Discovery Code did not apply in administrative proceedings and that discovery in those proceedings was governed by 75 O.S.2001, § 315 of the Oklahoma Administrative Procedures Act (APA), which does not mention interrogatories.[3]

■ ¶ 5 State did not appeal that ruling. Instead, State filed the present action in District Court as a Petition for Order to Compel Discovery Requests.[4] BFC challenged the trial court's subject matter jurisdiction arguing, as it did before the ALJ, that the APA and not the Discovery Code governed. The trial court ruled that it did have jurisdiction to hear State's petition and this ruling is the subject of BFC's counter-appeal.[5]

¶ 6 After its initial rulings, the trial court then considered State's petition. The trial court ruled that BFC's answers were sufficient and that State's request for sanctions was not warranted. State appeals.

## STANDARD OF REVIEW

■ ¶ 7 The trial court's ruling that it had subject matter jurisdiction, together with the attendant interpretation of statutes, con-

---

**3.** BFC's argument begins with citation to the Discovery Code's opening provision that the Code "governs the procedure for discovery in all suits of a civil nature in all courts of this state." 12 O.S.2001, § 3224. The APA's Section 315 provides:

A. 1. The agency conducting any individual proceeding shall have power to require the furnishing of such information, the attendance of such witnesses, and the production of such books, records, papers or other objects as may be necessary and proper for the purposes of the proceeding.

2. The agency, or any party to a proceeding before it, may take the depositions of witnesses, within or without the state, in the same manner as is provided by law for the taking of depositions in civil actions in courts of record. Depositions so taken shall be admissible in any proceeding affected by this act. Provided, however, all or any part of the deposition may be objected to at time of hearing, and may be received in evidence or excluded from the evidence by the agency or individual conducting the hearing in accordance with the law with reference to evidence in this act or with reference to evidence in courts of record under the law of the State of Oklahoma.

B. In furtherance of the powers granted by subsection A of this section, any agency, administrative head, hearing examiner or any other duly authorized member or employee thereof, upon its own motion may, and upon the request of any party appearing in an individual proceeding shall:

1. Issue subpoenas for witnesses;

2. Issue subpoenas duces tecum to compel the production of books, records, papers or other objects, which may be served by the marshal of the agency or by any person in any manner prescribed for the service of a subpoena in a civil action; or

3. Quash a subpoena or subpoenas duces tecum so issued; provided, prior to quashing a subpoena or subpoenas duces tecum the agency shall give notice to all parties. A subpoena or subpoenas duces tecum may not be quashed if any party objects.

C. 1. In case of disobedience to any subpoena issued and served under this section or to any lawful agency requirement for information, or of the refusal of any person to testify to any matter regarding which he may be interrogated lawfully in a proceeding before an agency, the agency may apply to the district or superior court of the county of such person's residence or to any judge thereof for an order to compel compliance with the subpoena or the furnishing of information or the giving of testimony. Forthwith the court or the judge shall cite the respondent to appear and shall hear the matter as expeditiously as possible.

2. If the disobedience or refusal is found to be unlawful, the court, or the judge, shall enter an order requiring compliance. Disobedience of such an order shall be punished as contempt of court in the same manner and by the same procedure as is provided for like conduct committed in the course of judicial proceedings.

**4.** State also sought sanctions. The trial court's final judgment denied sanctions but State has not briefed the issue in its appeal, so that issue is waived. Okla. Sup.Ct. R. 1.11(k)(1), 12 O.S. 2001, ch. 15, app.

**5.** This Court notes that BFC's response to the Interrogatories did not object to them on jurisdictional grounds. BFC characterized its response as being in the spirit of cooperation. State has not argued that BFC waived its objections by failing to object to the Interrogatories from the beginning.

stitutes a legal ruling. The appellate court has the plenary, independent, and nondeferential authority to reexamine a trial court's legal rulings. *Neil Acquisition, L.L.C. v. Wingrod Investment Corp.*, 1996 OK 125, 932 P.2d 1100 n. 1. Matters involving legislative intent present questions of law which are examined independently and without deference to the trial court's ruling. *Keizor v. Sand Springs Ry. Co.*, 1993 OK CIV APP 98, ¶ 5, 861 P.2d 326, 328.

■ ¶ 8 The ruling that BFC's answers are sufficient is reviewed under the abuse of discretion standard. "A trial court is accorded broad discretion in deciding discovery matters, and its determination in such matters will not be disturbed absent a finding of abuse of discretion or that the decision is contrary to law." *Bank of Oklahoma, N.A. v. Briscoe*, 1995 OK CIV APP 156, ¶ 27, 911 P.2d 311, 318.

## ANALYSIS AND REVIEW

### A. BFC's Counter–Appeal

¶ 9 BFC's counter-appeal presents the question of the trial court's jurisdiction to hear State's petition and whether Interrogatories are available as a discovery tool in an administrative hearing of the nature of an "individual proceeding," [6] which is the issue involved here. Although Interrogatories are not specifically mentioned in Section 315 of the APA, nevertheless, Section 315(A) authorizes an agency to require the furnishing of information "as may be necessary and proper for the purposes of the proceeding." Therefore, the question is not whether the Discovery Code applies to agencies, rather the question is whether an agency has authority to make rules of procedure, and if so, what did the agency promulgate as its rules.

■ ¶ 10 Therefore, this Court holds that a state agency, which is authorized to promulgate rules governing procedures for individual proceedings, has the authority under Section 315(A) and the APA generally to provide for Interrogatories as a discovery tool. The provision for use of Interrogatories may be accomplished by adoption of the Oklahoma Discovery Code, thereby making the Discovery Code provisions a part of the agency's procedures.[7]

¶ 11 The Legislature has given the State Board of Health the power to "[a]dopt such rules, and standards as it deems necessary to carry out any of the provisions of this Code." 63 O.S.2001, § 1–104(B)(2). A "rule" is defined by statute to include "any agency statement or group of related statements of general applicability and future effect that ... describes the procedure or practice requirements of the agency." 75 O.S.2001, § 250.3(15). As noted above, Section 315(A) contains a broad authorization to require furnishing of necessary and proper information.

¶ 12 The State Board of Health has promulgated rules of procedure for individual proceedings. A portion of the rules provides:

Order of procedure

(a) **Generally that of civil proceedings.** The order of procedure in hearings in all individual proceedings shall generally be governed by the Oklahoma Pleading Code and the Discovery Code. At the hearing, each party may make a brief opening statement; present witnesses, documents and exhibits on its behalf; cross-examine adverse witnesses; and make closing arguments. The rules of evidence shall be those specified by the APA. At the discretion of the Administrative Law Judge, any party may reopen the case in chief, even after the adverse party has rested. Parties may stipulate to any lawful matter.

6. 75 O.S.2001, § 250.3(7) defines "Individual Proceeding."
   "Individual proceeding" means the formal process employed by an agency having jurisdiction by law to resolve issues of law or fact between parties and which results in the exercise of discretion of a judicial nature.

7. For example, the Department of Environmental Quality incorporated the Oklahoma Discovery Code. Okla. Admin. Code, § 252:4–9–38 (2001).

The Oklahoma Department of Mines makes special provisions for Interrogatories. Okla. Admin. Code, § 460:2–5–1. The Department of Commissioners of Land Office merely references the APA. Okla. Admin. Code, § 385:1–1–9(4) (2005). The Oklahoma Corporation Commission procedures are not covered by the APA, but that agency makes special provisions for Interrogatories in its rules. Okla. Admin. Code § 165:5–11–1(c) (1999).

(b) **Matters not described.** Any matter of practice or procedure not specified either by the APA or by these rules will be guided by practice or procedure followed in the district courts of this state.

Okla. Admin. Code, § 310:2–5–8 (1999).

¶ 13 Thus, the provisions of the Oklahoma Discovery Code in particular, and the Code of Civil Procedure generally, are part of the agency's rules. These statutory procedures are part of the Board of Health's procedures by virtue of its rulemaking as distinguished from applicability attributed to statutory language in the Discovery Code or in the Code of Civil Procedure.

¶ 14 BFC's reliance on *Oklahoma Human Rights Comm'n v. Wilson Certified Foods, Inc.,* 1975 OK 76, 536 P.2d 349, is misplaced. There, the use of Interrogatories by the agency occurred in the investigative phase of its inquiry into Wilson's employment practices, as distinguished from an Individual Proceeding. Such use was specifically permitted by statute. Thus, the case has no application to the question of whether Interrogatories may be utilized as a discovery tool in an Individual Proceeding conducted under an agency's adopted rules of procedure.

¶ 15 BFC's contention that the enforcement power of the district court is limited to disobedience of subpoenas has no merit. Section 315(C) of the APA refers to "any lawful agency requirement for information." As this Court has held that Interrogatories constitute a lawful discovery tool in an individual proceeding when such tool is adopted as a component of the agency's procedures, the resort to district court for enforcement is likewise available to the agency. Consequently, the trial court did not err in its ruling that it had jurisdiction to hear State's petition.

## B. State's Appeal

¶ 16 The challenged answers provided by BFC do not comport with the answering requirements of the Discovery Code.[8] First, Interrogatories must be answered fully un-less specific objection(s) is interposed. 12 O.S.2001, § 3233(A). Here, BFC did not interpose an objection but responded with incomplete or evasive answers. Consequently, any objections BFC may have had to the subject Interrogatories is waived, unless excused for good cause which does not appear in the record here. 12 O.S.2001, § 3233(A).

¶ 17 Civil trials no longer are to be conducted in the dark. Discovery, consistent with recognized privileges, provides for the parties to obtain the fullest possible knowledge of the issues and facts before trial. *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1346 (5th Cir.1978). "The aim of these liberal discovery rules is to 'make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.' " *Id.* Discovery by interrogatory requires candor in responding. *Dollar v. Long Mfg.,* 561 F.2d 613, 616 (5th Cir.1977); *West v. Cajun's Wharf, Inc.,* 1988 OK 92, ¶ *13,* 770 P.2d 558, 562. The Oklahoma Supreme Court has granted a new trial due to a failure to provide complete information and supplementation of discovery requests. *West,* 1988 OK 92 at ¶ 21, 770 P.2d at 564. This Court perceives no legal distinction or policy difference justifying another conclusion simply because a matter involves an Individual Proceeding before an administrative agency which has rules and regulations allowing discovery by interrogatory. Therefore, this Court holds that when an agency has incorporated the Oklahoma Discovery Code into its procedures, the agency also incorporates the underlying policies and purposes associated with the Oklahoma Discovery Code.

¶ 18 The Oklahoma Discovery Code closely tracks the Federal Rules of Civil Procedure, so federal decisions provide guidance. *West,* 1988 OK 92 at ¶ 13, 770 P.2d at 562. In *Thomason v. Leiter,* 52 F.R.D. 290 (M.D.Ala. 1971), examination of questions propounded by defendants and plaintiffs' answers thereto reflected that in each instance plaintiffs' answers were incomplete or evasive, so filing of

---

8. The scope of the questions follow the Discovery Code. 12 O.S.2001, § 3226(B)(3)(a)(3). BFC has not interposed a claim of privilege or protection nor has it argued that a protective order is necessary.

further and unambiguous answers to such questions was ordered.

¶ 19 Here, State's interrogatories followed the language of the Discovery Code. All information available to BFC must be supplied, including information possessed by, or within knowledge of, BFC's attorney, investigators, experts, and agents or representatives. *Wycoff v. Nichols*, 32 F.R.D. 370 (W.D.Mo.1963). In *Miller v. Doctor's General Hosp.*, 76 F.R.D. 136 (W.D.Okla.1977), an Interrogatory asked the Defendant to divulge the illness for which a particular patient of Defendant was hospitalized and the symptoms of that patient's illness. Defendant objected to this Interrogatory on the grounds that it sought to elicit privileged information and medical information which Defendant was not qualified to give. The Court sustained a motion to compel additional answers, ruling:

> This is an insufficient answer. Rule 33, Federal Rules of Civil Procedure, provides for the answering of interrogatories "separately and fully in writing under oath, unless it is objected to, in which event the reasons for objection shall be stated in lieu of an answer." In the interest of narrowing the issues and ascertaining the facts relevant thereto, the Court should not permit answers to interrogatories that are incomplete, inexplicit and unresponsive.... The answers to interrogatories must be responsive, full, complete and unevasive. The answering party cannot limit his answers to matters within his own knowledge and ignore information immediately available to him or under his control.... If an appropriate interrogatory is propounded, the answering party will be required to give the information available to him, if any, through his attorney, investigators employed by him or on his behalf or other agents or representatives, whether personally known to the answering par-

ty or not.... If the answering party lacks necessary information to make a full, fair and specific answer to an interrogatory, it should so state under oath and should set forth in detail the efforts made to obtain the information.... Defendant's conclusory statement that Interrogatory No. 12 seeks medical information which Defendant is not qualified to give is not a sufficient response. Plaintiff's Motion to Compel Answers to Interrogatories should be sustained as it relates to Interrogatory No. 12 and Defendant is directed to further answer the same.

*Miller*, 76 F.R.D. at 139–40 (citations omitted).

¶ 20 This Court holds that the trial erred in its ruling that BFC had sufficiently responded to the subject Interrogatories.[9] Therefore, this aspect of the judgment is reversed and the cause is remanded for further proceedings consistent with this Opinion.

¶ 21 JUDGMENT FINDING TRIAL COURT JURISDICTION AFFIRMED; JUDGMENT FINDING DISCOVERY RESPONSES SUFFICIENT REVERSED AND THE CAUSE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

GABBARD, P.J., and REIF, J., concur.

---

**9.** This Court notes statements by BFC's counsel indicating that some of the requested information may not exist. A sufficient answer to Interrogatories would include that information and such information as may be available to show why it does not exist and what alternative sources have been exhausted by BFC to provide the information. Moreover, if, for example, the expert witness has testified as an expert but truly does not know how many times or have records, listing the cases, a sufficient response would so indicate and generally state the nature and extent of his experience as an expert witness. Finally, BFC cannot evade responses on the basis of expense, as Section 3226(B)(3)(c) provides adequately for payment of expenses.